IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:10-CV-00130-RLV-DSC

| | |
|---|---|
| THOMASVILLE FURNITURE INDUSTRIES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| BRUCE THOMAS, | ) ) ) |
| Defendant. | ) ) ) |

MEMORANDUM AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion for Attorneys' Fees. (Doc. 17.) This Motion follows the Court's Order entering default judgment against Defendant and entitling Plaintiff to an award of costs, including reasonable attorney's fees. (Doc. 14.) Despite service of the Motion and passage of the time allowed for response, no opposition has been filed. The Court has, therefore, reviewed the Motion in light of Plaintiff's supportive submissions, the Court's knowledge of the earlier proceedings, and other, earlier-filed documents.

This is a trademark infringement and unfair competition case primarily arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* (2010) ("Lanham Act"). The Lanham Act provides, "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Court of Appeals for the Seventh Circuit, reviewing the state of the law in 2010, has noted "the surprising lack of agreement" among the federal circuits as to what kinds of cases qualify as "exceptional." *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958, 960–961 (7th Cir. 2010) (Posner, J.). As observed elsewhere, "A rainbow of standards has been promulgated to define the word 'exceptional' in the Lanham Act,

1

some seemingly requiring bad faith or other culpability, others following a less stringent approach." *Yankee Candle Co. v. Bridgewater Candle Co.*, 140 F.Supp.2d 111, 120 (D. Mass. 2001).

Along with the D.C. Circuit, our Fourth Circuit prefers a hybrid approach, applying different tests of exceptionality depending on whether it was the plaintiff or the defendant who prevailed. While "[i]t is clear . . . that for a prevailing plaintiff to succeed in a request for attorney fees, she must show that the defendant acted in bad faith," a prevailing defendant needs to show "something less than bad faith" in order to be awarded fees. *Scotch Whisky Ass'n v. Majestic Distilling Co.*, 958 F.2d 594, 599 (4th Cir. 1992) (internal citations and quotation marks omitted). Plaintiff concedes this burden (Doc. 12 at 5), and the Court has earlier implied the burden to have been met (Doc. 14 at 3). Finding Plaintiff's uncontested account of Defendant's "adoption and use of confusingly similar imitations of the THOMASVILLE Marks" to establish Defendant's acts as "malicious, fraudulent, deliberate, and willful," and thus to establish this case as "exceptional," the Court next turns to whether the fees and costs requested by Plaintiff are "reasonable."[1] *Scotch Whisky*, 958 F.2d at 599 (citing S. Rep. No. 93-1400 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7136).

---

[1] Aside from reimbursement for costs, Plaintiff here requests reimbursement for attorney's fees in the amount of $19,389.55, for which supportive invoices have been provided. Plaintiff further requests an award for additional, yet-unbilled fees in the amount of $3,737.55 for time spent reviewing the Court's three-page Order granting Plaintiff's Motion for Default Judgment, communicating the Order's contents to the client, considering an enforcement strategy, and preparing the Motion for Attorneys' Fees and its accompanying documentation. (Doc. 18-1 at 6–7.) As regards this second quantity, the Court's prior Order established Plaintiff's entitlement to some measure of attorney's fees, and Defendant has not appeared to contest that conclusion. Because there is no dispute as to Plaintiff's entitlement to a fee award, and only the quantity of that award is here at issue, the Motion for Fees should have required minimal effort.

Listing a number of factors bearing on the reasonableness of attorney's fees,[2] Plaintiff cites *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994), which made use of these factors when considering an award of fees pursuant to 42 U.S.C. § 1988. *See also Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)) (listing the same factors in the section 1988 context). These factors derive directly from the American Bar Association Model Code of Professional Responsibility disciplinary rule prohibiting excessive fees, and the Court deems their consideration appropriate here. Model Code of Prof'l Responsibility DR 2-106 (1983).

The Court finds a number of factors to cut against a full award of the fees and costs requested. First, the Court looks to reasonable market rates. Provided with the American Intellectual Property Law Association's survey of billing rates by position, level of experience, location, et cetera, the Court finds the adjusted rates for Mr. Mayberry and Mses. Marino and Kaplan to be appropriate in light of their respective experience levels and the reputation of their firm. However, no comparable market information is provided as to the positions of legal investigator and paralegal. The Court will thus take the Laffey Matrix rate for paralegals and law clerks,[3] reduced by the substantial cost-of-living differential,[4] and award fees based upon Mr.

---

[2] These factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

[3] This matrix of hourly rates for attorneys of varying experience levels and paralegals has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in determining "reasonable" attorney's fees and is based on the hourly rates allowed by the District Court in *Laffey v. Northwest Airlines, Inc.*, 572

3

Stanislo's and Ms. Roth's time at a rate of $95 per hour.

Additionally, the Court looks to the time, labor, and skill required by counsel in order to succeed on a motion for default judgment. As a sampling of the total work involved, the Court looks to the preparation of Plaintiff's Motions for Entry of Default Judgment and Default Judgment, and associated filings. (Docs. 8, 9, 11, 12.) It appears from the attached timekeeping documents that work on these motions began in earnest on October 29, 2010. (Doc. 18-7 at 12.) In all, Mr. Mayberry spent 2.4 hours on these motions, Ms. Kaplan an additional 2.1 hours, Ms. Marino approximately 18.8 hours, and Ms. Roth a final 0.6 hours. (*See* Doc. 18-7 at 12–17.) From these efforts were borne a roughly two-page Motion for Entry of Default Judgment, briefly describing the success of the process server and Defendant's failure to answer; a roughly one-page supportive declaration; a roughly two-page Motion for Default Judgment condensing language from the Complaint; and a roughly five-page supportive memorandum, which likewise borrowed much language from the Complaint and entailed an appropriately straightforward legal analysis. The filings were well-drafted, well-reasoned, and duly concise. However, given the nature of the filings and the facts of the case, the Court finds that the time and labor reported exceed the time and labor required, and reduces the fee award accordingly.

---

F. Supp. 354 (D.D.C. 1983). These rates have been adjusted to account for changes in the cost of living as measured by the Consumer Price Index for All Urban Consumers for Washington-Balitmore, DC-MD-VA-WV, as announced by the Bureau of Labor Statistics. The rates for the years 2003 through 2012 may be found at http://www.justice.gov/usao/dc/divisions/civil_Laffey_Matrix_2003-2012.pdf.

[4] The Court has surveyed a number of cost-of-living indices, including the Charlotte Chamber of Commerce's listing of various ACCRA Cost of Living Index scores, and finds that, at least at present, the cost of living in the Charlotte, NC, area is about thirty to thirty-five percent less than the cost of living in the Washington Metropolitan area. *See* Charlotte Chamber, Cost of Living Index, http://charlottechamber.com/clientuploads/Economic_pdfs/Cost_of_Living.pdf (last visited Apr. 20, 2012).

Finally, as regards the factor addressing awards in similar cases, Plaintiff has included with its Motion examples of fee awards issued by Judge William L. Osteen of the neighboring Middle District of North Carolina, seemingly granted after entry of default judgment, though the context is not clear. (Docs. 18-9, 18-10.) Without additional information, the Court finds no reason to deviate from its decision to award a lesser amount. Nor does any remaining factor weigh heavily enough to alter the Court's conclusion.

In the course of filing and maintaining this suit, Plaintiff Thomasville incurred costs in addition to attorney's fees. The total costs are $2,092.87, and include $17.55 for document reproduction, $600 in court filing fees, $70.09 for legal research and investigatory costs, $19.80 in long distance telephone charges, $1,375.00 in costs associated with service of process (including locating Defendant), and $10.43 in Federal Express shipping charges. (Doc. 18-8 at 2.) Plaintiff is entitled to reimbursement of these costs.

This reasoning falls well within the broad discretion entrusted to the district courts. *See Int'l Olympic Comm. v. S.F. Arts & Athletics*, 781 F.2d 733, 738 (9th Cir. 1986) (noting that because the statute uses the term "may," an award of attorney's fees is "discretionary even if it fits within the statutory standard of an exceptional circumstance").

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Attorneys' Fees (Doc. 17) be **GRANTED** in part and **DENIED** in part. Defendant Thomas is ordered to pay Plaintiff $15,665.56 within sixty days of the entry of this Order. This award includes Plaintiff's reasonable attorney's fees in the amount of $13,572.69 plus costs in the amount of $2,092.87.

Signed: April 24, 2012

Richard L. Voorhees
United States District Judge